# UNITED STATES COURT OF APPEALS
# FOR THE FEDERAL CIRCUIT

_____

IN RE: INTEL CORPORATION,
LENOVO (UNITED STATES) INC.,

*Petitioners.*

_____

On Petition for Writ of Mandamus
from the United States Patent and Trademark Office,
Patent Trial and Appeal Board in No. IPR2025-00838

_____

### DIRECTOR'S RESPONSE TO PETITION FOR WRIT OF MANDAMUS

_____

BRAD HINSHELWOOD
LAURA E. MYRON
  *Attorneys, Appellate Staff*
  *Civil Division, Room 7228*
  *U.S. Department of Justice*
  *950 Pennsylvania Ave. NW*
  *Washington, D.C. 20530*
  *(202) 514-4819*

NICHOLAS T. MATICH
  *Solicitor*
ROBERT J. MCMANUS
  *Acting Deputy Solicitor*
FAHD H. PATEL
PETER J. SAWERT
  *Associate Solicitors*
  *Office of the Solicitor*
  *U.S. Patent and*
   *Trademark Office*

# TABLE OF CONTENTS

INTRODUCTION .................................................................. 1

BACKGROUND ................................................................. 7

ARGUMENT .................................................................... 12

I.     Petitioners' Statutory Complaints Are Barred By 35 U.S.C. § 314(d). ............................................ 12

II.    Petitioners Establish No Colorable Constitutional Claims ................................................................. 19

      A.     Petitioners' Separation-Of-Powers Claims Are Meritless Statutory Claims. ................ 19

      B.     Petitioners' Due-Process Claims Are Meritless Statutory Claims. ....................... 25

      C.     Petitioners' Equal Protection Claims Are Meritless Statutory Claims. ....................... 34

III.   Petitioners Cannot Satisfy The Other Mandamus Factors. .............................................................. 37

      A.     Petitioners Have Alternate Means of Relief. ................................................................... 37

      B.     Mandamus Relief Is Inappropriate Under the Circumstances. ..................................... 39

CONCLUSION ................................................................ 40

# TABLE OF AUTHORITIES

**Cases**

*Alberico v. United States,*
   783 F.2d 1024 (Fed. Cir. 1986) ................................................ 28

*American Mfrs. Mut. Ins. Co. v. Sullivan,*
   526 U.S. 40 (1999) .................................................................... 25

*Apple Inc. v. Fintiv, Inc.,*
   No. IPR2020-00019, 2020 WL 2126495 (P.T.A.B.
   Mar. 20, 2020)............................................................................ 8

*Apple Inc. v. Vidal,*
   63 F.4th 1 (Fed. Cir. 2023) ................................................*passim*

*Barnhart v. Devine,*
   771 F.2d 1515 (D.C. Cir. 1985) ................................................ 38

*Barton v. Barr,*
   590 U.S. 222 (2020) .................................................................. 24

*Bryan v. McDonald,*
   615 F. App'x 681 (Fed. Cir. 2015) (unpublished) ..................... 38

*In re Cambridge Indus. USA Inc.,*
   No. 2026-101, 2025 WL 3526129 (Fed. Cir. Dec. 9,
   2025)....................................................................................*passim*

*Cheney v. U.S. Dist. Ct. for D.C.,*
   542 U.S. 367 (2004) ................................................ 2, 19, 37, 39

*City of Cleburne, Tex. v. Cleburne Living Center,*
   473 U.S. 432 (1985) .................................................................. 34

*Cleveland Bd. of Educ. v. Loudermill,*
   470 U.S. 532 (1985) .................................................................. 28

*Cuozzo Speed Techs., LLC v. Lee*,
   579 U.S. 261 (2016) ..........................................................*passim*

*Dalton v. Specter*,
   511 U.S. 462 (1994) ...................................................... 20, 21

*In re Dominion Dealer Sols., LLC*,
   749 F.3d 1379 (Fed. Cir. 2014) .......................................... 19, 37

*Durr v. Nicholson*,
   400 F.3d 1375 (Fed. Cir. 2005) ................................................. 31

*Engquist v. Oregon Dept. of Agr.*,
   553 U.S. 591 (2008) ................................................................. 34

*F.C.C. v. Beach Communications, Inc.*,
   508 U.S. 307 (1993) ................................................................. 36

*Fornaro v. James*,
   416 F.3d 63 (D.C. Cir. 2005) ................................................... 38

*General Plastic Indus. Co. v. Canon Kabushiki Kaisha*,
   No. IPR2016–01357, 2017 WL 3917706 (P.T.A.B.
   Sept. 6, 2017) ............................................................................ 8

*In re Google LLC*,
   No. 2025-144, 2025 WL 3096849 (Fed. Cir. Nov. 6,
   2025)....................................................................................*passim*

*Heckler v. Chaney*,
   470 U.S. 821 (1985) ................................................................. 23

*In re HighLevel, Inc.*,
   No.2025-148, 2025 WL 3527144 (Fed. Cir. Dec. 9,
   2025)................................................................................. 1, 2, 14

*Landgraf v. USI Film Prods.*,
   511 U.S. 244 (1994) ........................................................... 30, 32

*In re Motorola Solutions, Inc.*,
 159 F.4th 30 (Fed. Cir. 2025) ................................................*passim*

*Mylan Lab'ys Ltd. v. Janssen Pharmaceutica, N.V.*,
 989 F.3d 1375 (Fed. Cir. 2021) .............................................*passim*

*In re Palo Alto Networks, Inc.*,
 44 F.4th 1369 (Fed. Cir. 2022) .................................................. 37

*Princess Cruises, Inc. v. United States*,
 397 F.3d 1358 (Fed. Cir. 2005) ..................................... 30, 31, 33

*Rodriguez v. Peake*,
 511 F.3d 1147 (Fed. Cir. 2008) ................................................. 30

*In re Sandisk Techs., Inc.*,
 No. 2025-152, 2025 WL 3526507 (Fed. Cir. Dec. 9,
 2025).......................................................................................*passim*

*In re SAP America, Inc.*,
 No. 2025-132, 2025 WL 3096788 (Fed. Cir. Nov. 6,
 2025).............................................................................. 1, 2, 14

*SAS Institute, Inc. v. Iancu*,
 584 U.S. 357 (2018) .................................................................. 15

*Thryv, Inc. v. Click-to-Call Technologies, LP*,
 590 U.S. 45 (2020) .................................................................... 13

*United States v. Arthrex, Inc.*,
 594 U.S. 1 (2021) .............................................................. 22, 40

*Youngstown Sheet & Tube Co. v. Sawyer*,
 343 U.S. 579 (1952) .................................................................. 21

**Statutes**

5 U.S.C. § 701(a)(2) ................................................................ 22, 23

35 U.S.C. § 314......................................................................*passim*

35 U.S.C. § 315.........................................................*passim*

35 U.S.C. § 318.................................................................. 7

35 U.S.C. § 319.................................................................. 7

35 U.S.C. § 325(d) ...................................................*passim*

## Other Authorities

37 C.F.R. § 42.4(a)............................................................ 8

37 C.F.R. § 42.15(a)(1) .................................................... 27

37 C.F.R. § 42.15(a)(2) .................................................... 27

78 Fed. Reg. 4233.............................................................. 27

U.S. Const. amend. V......................................................... 25

# INTRODUCTION

"Given Congress committed institution decisions to the Director's discretion and protected that exercise of discretion from judicial review by making such determinations final and nonappealable, mandamus is ordinarily unavailable for review of institution decisions." *In re Motorola Solutions, Inc.*, 159 F.4th 30 (Fed. Cir. 2025) (precedential) (cleaned up); *see also In re Cambridge Indus. USA Inc.*, No. 2026-101, 2025 WL 3526129, at *2 (Fed. Cir. Dec. 9, 2025); *In re HighLevel, Inc.*, No. 2025-148, 2025 WL 3527144, at *1 (Fed. Cir. Dec. 9, 2025), *In re Sandisk Techs., Inc.*, No. 2025-152, 2025 WL 3526507, at *1 (Fed. Cir. Dec. 9, 2025) (relying on *Cambridge*), *In re Google LLC*, No. 2025-144, 2025 WL 3096849, at *1 (Fed. Cir. Nov. 6, 2025), *In re SAP America, Inc.*, No. 2025-132, 2025 WL 3096788, at *2 (Fed. Cir. Nov. 6, 2025). The *only* circumstance in which this Court can review—on mandamus—the Director's decision to deny IPR institution is when there exist colorable claims that the Director exercised his discretion in an unconstitutional manner. *See Mylan Lab'ys Ltd. v. Janssen Pharmaceutica, N.V.*, 989 F.3d 1375, 1382 (Fed. Cir. 2021). And to obtain the "drastic and extraordinary" mandamus remedy, a petitioner

must show that it has (1) a "clear and indisputable" right to relief; (2) no "alternative avenues of relief"; and (3) that "the writ is appropriate under the circumstances." *Cheney v. U.S. Dist. Ct. for D.C.*, 542 U.S. 367, 379-81 (2004) (quotation marks omitted).

This Court's decisions in *Motorola*, *Cambridge*, *HighLevel*, *Sandisk*, *Google*, and *SAP* rejecting similar mandamus petitions largely answer this petition. As in those cases, here Petitioners seek the extraordinary remedy of mandamus based on their dissatisfaction with Acting Director Stewart's application of her discretion to deny institution of their IPR petition.[1] Petitioners contend that Acting Director Stewart's application of the institution criteria violates the America Invents Act (AIA), the Administrative Procedure Act (APA), and the Constitution. This Court has already denied very similar legal arguments in *Motorola*, *Google*, *SAP*, *Cambridge*, *HighLevel*, and

---

[1] Deputy Director Coke Morgan Stewart was the Acting Director at the time of the challenged agency actions. Appx1. On September 22, 2025, John A. Squires was sworn in as the Director. *See* https://www.uspto.gov/about-us/news-updates/uspto-welcomes-new-director-john-squires (last visited, Dec. 22, 2025). This brief refers to Acting Director Stewart when describing her actions taken at the time she was Acting Director.

*Sandisk* and should do the same here, as Petitioners' arguments do not approach the very high bar for mandamus relief.

To begin, much of Petitioners' argument is barred by 35 U.S.C. § 314(d), which precludes judicial review of claims that the USPTO's institution decisions violate a statute, including the AIA and APA. Petitioners suggest that § 314(d) has no role in this Court's jurisdiction over a petition for a writ of mandamus. But this Court has clearly recognized that its mandamus jurisdiction to review decisions denying institution is limited to colorable *constitutional* claims. The petition addresses statutory grievances which are nonjusticiable in this mandamus action. *See Motorola*, 159 F.4th at 38.

Petitioners' separation-of-powers arguments fail because they are, at bottom, simply assertions that the agency exceeded its statutory authority, not constitutional claims. And those assertions are in any event meritless. Petitioners seek to read out § 314's broad grant of discretion to the Director—and read in limitations on that discretion that have no foundation in the relevant statutory text—in contradiction of settled precedent from this Court and the Supreme Court. *See*

*Google*, 2025 WL 3096849, at *2; *Cambridge*, 2025 WL 3526129, at *2 n.1.

Petitioners' due-process complaints are equally unavailing. Petitioners cannot evade the limits on this Court's mandamus jurisdiction by simply putting a "due-process" label on its APA arguments. And even insofar as the petition identifies a constitutional due-process claim, Petitioners cannot establish a clear and indisputable right to relief. Petitioners fail to establish a protected property interest in having their petition considered under any particular set of criteria the agency might use to determine if institution is warranted. Even if Petitioners could establish the type of entitlement that might support a constitutionally protected interest, Petitioners received the due-process requisites of notice and the opportunity to be heard.

Petitioners' Equal Protection arguments are another attempt at repackaging APA claims as constitutional arguments. Petitioners argue that the USPTO lacks rational basis for treating similarly situated parties differently. But this is simply an unreviewable APA argument that the USPTO's discretionary denial was arbitrary because the

USPTO has not denied other IPRs in similar circumstances.  Even if properly brought as a constitutional argument, Petitioners' Equal Protection argument fails at its threshold.  Petitioners do not show that the USPTO classified them differently from other similarly situated parties.  Here, the Acting Director denied institution on a particular fact pattern—where the Patent Owner tried unsuccessfully to raise a purportedly material reference in an already ordered reexamination on the same patent challenged in the IPR.  The institution decisions cited by Petitioners, by contrast, involved different facts and do not identify even one similarly situated party treated different by the USPTO.  And even if the Acting Director did classify Petitioners differently from others, she would have had a rational basis for doing so based on the intensely fact-specific circumstances of this case.

Petitioners similarly cannot satisfy the mandamus standard's other requirements.  Petitioners say that they have no other avenue for relief because this Court has said that review of institution decisions is available only through mandamus.  But that just highlights the fact that Petitioners are attempting to obtain judicial review of decisions

this Court has recognized are within the USPTO's unreviewable discretion. Petitioners claim no independent harm from any asserted constitutional violation, asserting only a desire to invalidate patent claims in their preferred forum. Petitioners have several "alternative avenues of relief" through which they may seek invalidation of the challenged patent claims, as Petitioners remain free to avail themselves of district court litigation or—as the Acting Director suggested here—ex parte reexamination.

Petitioners cannot otherwise show that mandamus relief would be appropriate. Congress gave the Director wide latitude to manage IPR proceedings, insulating institution decisions from appellate review. The Acting Director's action here reflects the practical reality that each Director must balance requests for administrative review of patent claims against the other needs of the USPTO and the patent system more generally. When Acting Director Stewart took office in February 2025, she faced a significantly different situation than existed in 2022: the backlog and pendency of ex parte appeals that the Board needed to address was higher, the number of Administrative Patent

Judges was lower, and the agency was subject to a hiring freeze. Petitioners' request for a judicial order forcing the Director to adhere to a particular rubric for discretionary institution of IPR proceedings is not an "appropriate" use of the writ.

## BACKGROUND

1. When Congress created inter partes review, it set out various statutory bars precluding the USPTO Director from instituting an IPR, but no set of circumstances in which institution is required. *See* 35 U.S.C. §§ 314(a), 315. Congress further provided that although the agency's final written decision with respect to patentability is subject to appeal in this Court, *see id.* §§ 318, 319, the determination by the Director whether to institute an IPR is "final and nonappealable," *id.* § 314(d). Both this Court and the Supreme Court have repeatedly made clear that the USPTO is under "no mandate to institute review" and the "decision to deny [an IPR] petition is a matter committed to the Patent Office's discretion." *Mylan*, 989 F.3d at 1382 (quoting *Cuozzo Speed Techs., LLC v. Lee*, 579 U.S. 261, 273 (2016)). Thus, "[t]he Director is permitted, but never compelled, to institute an IPR," and "no petitioner has a right to … institution." *Id.*

2.  Historically, the Director delegated broad discretion over whether to institute IPR proceedings to the Board, *see* 37 C.F.R. § 42.4(a), and Directors have set out various criteria for the Board to use in employing that delegated authority, *see, e.g., General Plastic Indus. Co. v. Canon Kabushiki Kaisha*, No. IPR2016–01357, 2017 WL 3917706 (P.T.A.B. Sept. 6, 2017) (precedential) (discussing discretionary factors for multiple IPR petitions).  Because IPR proceedings often coincide with parallel district court litigation, for years Directors have instructed the Board to consider a non-exhaustive list of factors to address concerns about redundancy or wastefulness. These factors are set forth in *Apple Inc. v. Fintiv, Inc.*, No. IPR2020-00019, 2020 WL 2126495 (P.T.A.B. Mar. 20, 2020) (precedential).  On June 21, 2022, former USPTO Director Katherine Vidal issued a memorandum (June 2022 Memo) setting out "interim" guidance, pending formal rule making, regarding the Board's application of the *Fintiv* factors for the Board to follow when exercising

the Director's delegated institution discretion.[2]  On February 28, 2025, Acting Director Stewart rescinded the June 2022 Memo (Rescission). Appx10.  On March 24, 2025, then-Chief Administrative Patent Judge Scott Boalick issued a memorandum providing additional guidance as to how the Board should proceed considering the Rescission.  Appx12-14.

3.  On March 26, 2025, Acting Director Stewart issued a memorandum entitled "Interim Processes for PTAB Workload Management" (Workload Memo), in order "[t]o ensure that the PTAB continues to meet its statutory obligations as to *ex parte* appeals, while continuing to maintain its capacity to conduct AIA proceedings." Appx15.  The memo outlined a new briefing schedule that bifurcated briefing between (1) discretionary considerations and (2) merits and other non-discretionary statutory considerations.  Appx15-17.  The briefing on discretionary considerations would "address all relevant considerations," including "[w]hether the PTAB or another forum has already adjudicated the validity or patentability of the challenged

---

[2] *See* https://www.uspto.gov/sites/default/files/documents/ interim_proc_discretionary_denials_aia_parallel_district_court_ litigation_memo_20220621_.pdf (last visited, Dec. 22, 2025).

patent claims" and explaining that the "processes aim to improve PTAB efficiency." Appx16-17. The guidance outlined in the memo applied prospectively to "IPR and PGR proceedings where the deadline for the patent owner to file a preliminary response has not yet passed." Appx17.[3]

4. This mandamus petition concerns an IPR petition filed by Petitioners Intel Corporation and Lenovo (United States) Inc. (collectively, Intel) challenging claims of U.S. Patent No. RE47,720 ('720 Patent) held by USTA Technologies, LLC (USTA). *See* Appx20. Following the bifurcated briefing schedule, USTA filed a brief arguing that the Acting Director should exercise her discretion to deny institution because, among other things, the '720 Patent already

_____

[3] The new USPTO Director, John Squires, temporarily delegated his discretion over IPR institution decisions to now-Deputy Director Stewart. https://www.uspto.gov/sites/default/files/documents/ deshpande-delegation-letter.pdf (last visited Dec. 22, 2025). On October 17, 2025, the Director announced that going forward, although the bifurcated briefing process in the Interim Processes memo would remain in place, he would both (1) directly exercise his discretion over IPR institution decisions and (2) perform the merits-based institution determination. *See* https://www.uspto.gov/sites/default/files/documents/ Director_Institution_of_AIA_Trial_Proceedings.pdf (last visited Dec. 22, 2025).

survived an ex parte reexamination challenge to its validity and the Board's resources are better spent elsewhere. Appx133-136. USTA noted that, in the ex parte proceeding, it had submitted an Information Disclosure Statement (IDS) with Intel's IPR petition and the applied prior-art Walton reference for the Examiner's consideration. Appx133-134. Nevertheless, the Examiner confirmed the validity of the challenged claims. *Id.*

In response, Intel argued that discretionary denial in view of the ex parte reexamination was inappropriate because (1) the Examiner erred by failing to consider the Walton reference provided in USTA's IDS, which disclosed the feature the Examiner believed was missing from the prior art and (2) the reexamination only addressed one of the two patent claims challenged in Intel's IPR. Appx163-174. Intel noted that the Examiner declined to consider Walton because USTA listed it in the wrong section of the IDS. Appx165-167.

Acting Director Stewart issued a decision (Appx1-4) denying institution "based on the totality of the evidence and arguments the parties have presented." Appx2. The decision noted that USTA

presented Walton to the reexamination Examiner. *Id.* She also noted Intel's arguments that "the patent examiner did not consider Walton during the reexamination proceeding" and that "Walton is material to the patentability of the challenged claims because Walton teaches the claimed feature the patent examiner identified as missing from the prior art during the reexamination." *Id.* Based on Intel's factual representations, Acting Director Stewart determined "the most efficient process" was for Intel to file a reexamination request using the Walton reference rather than for the Acting Director to "refer the Petition to the Board." *Id.* Intel now seeks a writ of mandamus to overturn Acting Director Stewart's decision.

## ARGUMENT

### I. Petitioners' Statutory Complaints Are Barred By 35 U.S.C. § 314(d).

In § 314(d), Congress expressly precluded judicial review of the Director's "determination … whether to institute an inter partes review," providing that the decision is "final and nonappealable." 35 U.S.C. § 314(d). While various statutory strictures preclude the Director from granting a petition to institute an IPR, *see, e.g.*, 35 U.S.C.

§ 315(a), (b), the Supreme Court in *Cuozzo* held that the "decision to *deny* a petition [for IPR] is a matter committed to the Patent Office's discretion," *Cuozzo*, 579 U.S. at 273 (emphasis added). Accordingly, "no petitioner has a right to … institution." *Mylan*, 989 F.3d at 1382. And the Supreme Court further clarified in *Thryv, Inc. v. Click-to-Call Technologies, LP*, 590 U.S. 45 (2020), that § 314(d)'s bar on appeals from institution decisions means that there is no judicial review of "challenges grounded in statutes related to the institution decision." *See id.* at 56 (cleaned up).

This Court has recognized that § 314(d) does not bar this Court from "protect[ing] [its] prospective jurisdiction through mandamus" where the USPTO issues "[a] decision denying institution," which "prevents the Board from issuing any final decision that falls within [this Court's] direct appellate jurisdiction." *Mylan*, 989 F.3d at 1380. But importantly, this Court has recognized that its mandamus jurisdiction is limited by Congress's decision to commit the institution decision to the Director's discretion and to prohibit appeals of such decisions: "[T]here is no reviewability of the Director's exercise of [her]

discretion to deny institution except for colorable constitutional claims." *Id.* at 1382. "Given the limits on [the Court's] reviewability," *ultra vires* or other statutory arguments "cannot be a basis for granting [a] petition for mandamus" over a decision denying IPR institution. *Id.* at 1382-83. The Court reiterated this holding in *Motorola, Google, SAP, Cambridge, HighLevel, and Sandisk,* stating that "mandamus is ordinarily unavailable for review of institution decisions," including the type of purported constitutional claim and statutory challenges lodged here. *Motorola*, 159 F.4th at 36; *Google*, 2025 WL 3096849, at *1-2; *SAP*, 2025 WL 3096788, at *2; *Cambridge*, 2025 WL 3526129, at *2; *HighLevel*, 2025 WL 3527144, at *1; *Sandisk*, 2025 WL 3526507, at *1 (applying *Cambridge*).

These principles foreclose Petitioners' mandamus petition insofar as it raises claims regarding statutory requirements, including those in the AIA and APA. Whatever constitutional claims § 314(d) might permit litigants to raise regarding institution denial through a mandamus petition, they do not include "run-of-the-mill statutory interpretation" questions reframed as constitutional violations. *Apple*

*Inc. v. Vidal*, 63 F.4th 1, 13 (Fed. Cir. 2023); *see Mylan*, 989 F.3d

at 1381-83 (rejecting two statutory challenges "[g]iven the limits on [the

Court's] reviewability" through mandamus of decisions not to institute

IPR).

In *Motorola* and *Cambridge*, the Court reiterated *Mylan*'s holding

that such statutory arguments rooted in the APA are not available for

mandamus relief. *Motorola*, 159 F.4th at 38; *Cambridge*, 2025 WL

3526129, at *2-3. Thus, Petitioners' claims that the USPTO exceeded

its authority under the AIA (Pet. 9-14), violated the APA by arbitrarily

denying institution of Petitioners' IPR petition (Pet. 21-23), and violated

the APA by ignoring its own precedent (Pet. 23-28) necessarily fail.

Petitioners attempt to circumvent *Mylan* by relying on *SAS

Institute, Inc. v. Iancu* (Pet. 29-30), which stated that consistent with

the APA, "judicial review remains" available if the USPTO has engaged

in shenanigans "by exceeding its statutory bounds." 584 U.S. 357, 371

(2018). But *SAS* neither involved mandamus jurisdiction nor sought

review of an institution decision. *See id.* (specifically noting that "SAS

does not seek to challenge the Director's conclusion that" institution

was warranted). Under this Court's holdings in *Mylan* and *Motorola*—both issued against the backdrop of *SAS*—Petitioners cannot use mandamus to bring statutory challenges to the Director's denial of IPR institution. *Mylan*, 989 F.3d at 1379-82 (explaining that the "extraordinary circumstances" for which mandamus is available to review "a denial of institution" are limited to "colorable constitutional claims" regarding "the Director's exercise of his discretion to deny institution"); *Motorola*, 159 F.4th at 38 (explaining that a petitioner's "request is nothing but an attempted end run around § 314(d)'s bar on review").

Petitioners suggest that *Motorola* left the door open to certain undisclosed "non-constitutional challenges" to institution denial on mandamus (Pet. 29, 31) but *Motorola* explicitly rejected APA challenges, like the ones presented by Petitioners here, that "challenge the Director's exercise of discretion to deny institution." *Motorola*, 159 F.4th at 38, quoting *Mylan*, 989 F.3d at 1382 (cleaned up).[4] This

_____

[4] *Motorola* similarly referenced a possible exception for "certain statutory challenges," 159 F.4th at 36 (citing *Apple v. Vidal*, 63 F.4th 1, 12 n.5 (Fed. Cir. 2023)). The *Apple* footnote cited in *Motorola* simply recognized that *Cuozzo* left open the possibility that § 314(d) may not

Court's reliance on the holding from *Mylan* in *Motorola* also undercuts Petitioners' suggestion that *Mylan*'s holding on the limits of mandamus review was somehow case specific. Pet. 29-31. This argument from Petitioners also fails based on the clear language from *Mylan* quoted above and this Court's explanation in *Mylan* that the limit of mandamus review necessarily follows from "the statute's bestowal of discretion on the Director combined with its prohibition on appeal of such decisions." 989 F.3d at 1382.

Contrary to Petitioners' attempt to expand mandamus to cover statutory APA claims, this Court has held that a party may raise certain APA arguments through a district-court action where the party,

---

bar review of statutes "less closely related" to institution "or that present other questions of interpretation that reach, in terms of scope and impact, well beyond" § 314(d). *Apple*, 63 F.4th at 12 n.5 (quoting *Cuozzo*, 579 U.S. at 275). *Apple* and *Cuozzo* did not involve questions of mandamus jurisdiction, and *Cuozzo* did not involve a denial of institution. Neither the Supreme Court nor this Court has identified an example of a statutory interpretation question in the *non-institution* context that could be subject to mandamus review. In contrast, this Court stated in *Mylan*, without further exception, that "there is no [mandamus] reviewability of the Director's exercise of his discretion to *deny* institution except for colorable constitutional claims." 989 F.3d at 1382 (emphasis added).

as a plaintiff, establishes standing to seek "prospective relief only," rather than relief in connection with any prior institution-related decision. *Motorola*, 159 F.4th at 38 (explaining that *Apple* involved "a challenge to whether the PTO has complied with APA's notice-and-comment rulemaking requirements 'apart from the reviewability of' a specific institution decision") (quoting *Apple*, 63 F.4th at 14); *Apple*, 63 F.4th at 10; *see id.* at 14-17 (concluding plaintiff adequately demonstrated standing to bring a notice-and-comment challenge by showing "a substantial risk that the harm will occur in the future because of the instructions" it contended should have gone through notice-and-comment procedures) (quotation marks omitted)). As a remedy, this Court did not contemplate reversal of past institution denials, but rather a "change[] in a way favorable to" the plaintiff in the challenged "instructions" the Director issued to guide the future exercise of delegated institution discretion. *Apple*, 63 F.4th at 17. Importantly, however, this Court in *Apple* reiterated that § 314(d) bars APA challenges to even "content-focused challenges," whether those challenges target an institution decision "the Director personally

made … accompanied by an explanation containing the" reasoning a plaintiff contends is unlawful, or an institution decision made by the Director's delegate. 63 F.4th at 13. Here, to the extent Petitioners can challenge any aspect of the USPTO's institution-related practices under the APA and AIA, they raise their arguments in the wrong court, through the wrong type of action, seeking the wrong sort of relief.

## II. Petitioners Establish No Colorable Constitutional Claims

To be eligible for mandamus relief, a petitioner must show a "clear and indisputable" right to relief. *In re Dominion Dealer Sols., LLC*, 749 F.3d 1379, 1381 (Fed. Cir. 2014) (quotation marks omitted); *see also Cheney*, 542 U.S. at 380-81. There can be no review of the USPTO Director's exercise of discretion to deny institution "except for colorable constitutional claims." *Mylan*, 989 F.3d at 1382. Here, Petitioners fail to establish a "clear and indisputable" constitutional violation warranting a writ of mandamus.

### A. Petitioners' Separation-Of-Powers Claims Are Meritless Statutory Claims.

A. Petitioners' contention that the USPTO violated separation-of-powers principles (Pet. 4) lacks merit and has already

been rejected by this Court.  Petitioners contend that the Acting

Director "lacks authority" (Pet. 9) and "power" (Pet. 10, 14) to deny

institution based upon the Acting Director's determination that

reexamination would be a more efficient use of USPTO resources than

an IPR.  But the Director's exercise of discretion based on the specific

facts of a case "does not raise any colorable constitutional challenge and

is otherwise unreviewable."  *Google*, 2025 WL 3096849, at *2;

*Cambridge*, 2025 WL 3526129, at *2 n.1 (determining that an allegation

of the executive exceeding statutory authority "presents no colorable

constitutional claim.").  Similarly, arguments about "what factors the

Director may consider when deciding whether to institute an IPR" are

statutory challenges unreviewable on mandamus.  *Cambridge*, 2025 WL

3526129, at *3.

B.  Petitioners' argument also puts a constitutional label on

arguments that are based solely on Petitioners' view of the AIA.  *See*

Pet. 9-14.  The Supreme Court has carefully distinguished "between

claims of constitutional violations and claims that an official has acted

in excess of his statutory authority."  *Dalton v. Specter*, 511 U.S. 462,

472 (1994). The Constitution is implicated if executive officers rely on it as an independent source of authority to act, as in *Youngstown Sheet & Tube Co. v. Sawyer*, 343 U.S. 579 (1952), or if the officers rely on a statute that itself violates the Constitution, *see Dalton*, 511 U.S. at 473 & n.5. But claims alleging simply that an official has "exceeded his statutory authority are not 'constitutional' claims." *Id.* at 473; *see also*, *Cambridge*, 2025 WL 3526129, at *2 n.1 (quoting same). Petitioners' arguments that Acting Director Stewart's reasons for discretionarily denying the petitions contravene the AIA do not state a constitutional claim and are thus not cognizable in this mandamus action. *See supra* pp. 12-19.

C. Petitioners' arguments are also based on an incorrect view of the factual record. Petitioners contend that the Acting Director's "decision here denied IPR because a patent challenger can seek EPR instead" (Pet. 9), but this is incorrect. Here, Petitioners alleged that the Examiner failed to consider a material prior-art reference during reexamination, despite its presence in the reexamination record. Appx2, Appx165-171. Given those unique circumstances, the Acting

Director determined that it would be more efficient for Petitioners to present that reference in another reexamination rather than in a new IPR proceeding. Appx2. The Acting Director's denial was thus based on more than the mere availability of reexamination as an alternative.

D. Petitioners' contentions that Congress limited the Director's discretion to deny institution (Pet. 9-14) contradict settled precedent. The Supreme Court, invoking both 5 U.S.C. § 701(a)(2) of the APA and 35 U.S.C. § 314(a) of the AIA held that "the agency's decision to deny a petition is a matter *committed to the Patent Office's discretion.*" *Cuozzo*, 579 U.S. at 273 (emphasis added); *see also United States v. Arthrex, Inc.*, 594 U.S. 1, 8 (2021).

Petitioners acknowledge that the Director has broad discretion to institute review under *Cuozzo* but argue that Congress provided "markers" and "boundaries" in §§ 325(d) and 315(d) limiting that discretion. Pet. 11-12. But Petitioners identify no actual limitations in these provisions' language, instead seeking to transform language reflecting the breadth of the Director's flexibility in managing duplicative proceedings into a fetter on the Director's discretion to deny

institution. It is unsurprising that the Supreme Court and this Court have repeatedly examined the AIA and failed to find such extratextual strictures on the Director's ability to decline to initiate an administrative proceeding. *See Cuozzo*, 579 U.S. at 273 (relying on § 701(a)(2) to find that denying institution is committed to the USPTO's discretion); *see also Mylan*, 989 F.3d at 1382; *Apple Inc.*, 63 F.4th at 15 (referencing "[t]he general rule that non-enforcement choices are committed to agency discretion by law."); *Motorola*, 159 F.4th at 37; *see also Heckler v. Chaney*, 470 U.S. 821, 831–32, 836 (1985) (explaining that "an agency's decision not to take enforcement action should be presumed immune from judicial review under § 701(a)(2)").

Moreover, the language of §§ 325(d) and 315(d) is not superfluous, as Petitioners argue (Pet. 12), in light of the broad discretion granted in § 314. Rather, the language of §§ 325(d) and 315(d) affords the Director specific authorities to address "Multiple Proceedings," including "providing for stay, transfer, consolidation, or termination" of such matters. 35 U.S.C. § 315(d); *see id.* § 325(d) (same). And § 325(d)'s reference to the Director's ability to decline to initiate various

proceedings is not limited to IPR, and only emphasizes the Director's
discretion across multiple forms of USPTO processes, rather than
limiting the Director's discretion to deny IPR.  Indeed, Petitioners'
suggestion that the Director's ability to apply "discretionary
considerations" in denying IPR institution is limited to "§ 315(d)'s
docket-management authority and § 325(d)'s anti-duplication authority"
(Pet. 10) is in square conflict with decisions of this Court and the
Supreme Court.  *See Mylan*, 989 F.3d at 1382 (noting as an "example"
that "the Director is free … to determine that for reasons of
administrative efficiency an IPR will not be instituted"); *Cuozzo*, 579
U.S. at 273 (institution denial committed to USPTO discretion by law).[5]

Petitioners argue that the text of § 314 cannot provide the
Director with broad discretion because § 314(a) "speaks in the negative"

---

[5] Even if §§ 325(d) and 315(d) were redundant of the Director's broad
discretion in § 314, "redundancy in one portion of a statute is not a
license to rewrite or eviscerate another portion of the statute contrary
to its text." *Barton v. Barr*, 590 U.S. 222, 239 (2020); *see also id*
("redundancies are common in statutory drafting—sometimes in a
congressional effort to be doubly sure, sometimes because of
congressional inadvertence or lack of foresight, or sometimes simply
because of the shortcomings of human communication.").

and does not mimic discretionary language elsewhere in the AIA in

§ 135(a)(1) and § 315(c).  Pet. 12-13.  But as discussed above, the

Supreme Court has already held that the decision not to institute IPR

proceedings is "committed to agency discretion by law."  *Cuozzo,*

579 U.S. at 273.  Petitioners' argument that the AIA does not expressly

confer the Director with authority to implement institution criteria

(Pet. 13-14) is similarly inapposite in view of congressional intent to

provide the Director with such discretion.

## B.    Petitioners' Due-Process Claims Are Meritless Statutory Claims.

Petitioners' contention that the USPTO violated due-process

principles in exercising its discretion to deny the relevant IPR petition

(Pet. 15-21) is entirely without merit.

A.  To begin with, it is far from clear that Petitioners have the

requisite interest to support a due-process challenge.  The Due Process

Clause protects against the deprivation "of life, liberty, or property,

without due process of law." U.S. Const. amend. V.  "The first inquiry in

every due process challenge is whether the plaintiff has been deprived

of a protected interest" in liberty or property. *American Mfrs. Mut. Ins. Co. v. Sullivan*, 526 U.S. 40, 59 (1999).

This Court's decisions in *Motorola* and *Cambridge* highlight that Petitioners have not identified a constitutionally protected interest in having the Director apply a particular set of discretionary criteria when determining whether to grant IPR institution. *See Motorola*, 159 F.4th at 37-38; *Cambridge* 2025 WL 3526129, at *2. In *Motorola*, the Court determined that: (1) there is no history or tradition supporting a constitutionally protected right to require the Director to consider any particular set of discretionary criteria and (2) Motorola's "own unilateral expectation" of the Director applying a particular set of discretionary criteria does not support a due process claim. F.4th at 37-38. In *Cambridge*, this Court echoed both holdings from *Motorola*, further explaining that "like Motorola, Cambridge identifies no constitutionally protected right for its petition to be considered based on certain criteria and certainly no constitutional right to an IPR." *Cambridge* 2025 WL 3526129, at *2 (cleaned up.) Thus, Petitioners

here have not established any constitutionally protected interest that could be the basis for a due-process claim.

Petitioners' claim that filing fees constitute an interest (Pet. 19) is meritless. Petitioners merely paid an IPR "request fee" for each petition under 37 C.F.R. § 42.15(a)(1), which does not entitle Petitioners to anything other than the USPTO's evaluation of the petitions for institution purposes. Petitioners pay a separate "Post-Institution fee" under 37 C.F.R. § 42.15(a)(2) for which they may seek a refund given the Director's denial of institution. 78 Fed. Reg. 4233; *see also* https://www.uspto.gov/patents/ptab/ faqs#type-browse-faqs_207638. And nothing in the AIA entitles Petitioners to an evaluation of a petition's merits in an institution decision. Section 314(c) requires a written notification of "the Director's determination under [§ 314(a)]." The § 314(a) determination includes both the Director's discretion to institute and, in the absence of discretionary denial, a determination on the merits. *See Cuozzo*, 579 U.S. at 273. Petitioners' payment of request fees cannot constitute a constitutionally protected property interest in either a specific institution outcome or in the application of

particular discretionary criteria.  *See Motorola*, 159 F.4th at 37-38[6];

*Google*, 2025 WL 3096849, *2.

B.  Even if Petitioners could demonstrate a protected property

interest in IPR institution, it still could not establish a due-process

violation.  "Once a property interest is shown, all due process requires is

notice and an opportunity to be heard."  *Alberico v. United States*, 783

F.2d 1024, 1027 (Fed. Cir. 1986) (citing *Cleveland Bd. of Educ. v.

Loudermill*, 470 U.S. 532, 546 (1985)).  Here, the Acting Director issued

a memo identifying discretionary factors for improving PTAB efficiency,

including whether the claims had been adjudicated elsewhere.

Appx16-17.  Based on this memo, Patent Owner USTA argued for

discretionary denial in view of adjudication in the prior reexamination.

Appx133-136.  In response, Petitioners argued that the Acting Director

---

[6] Petitioners argue that *Motorola* did not identify filing fees as a
protected interest (Pet. 20), but the Court was unmoved by this same
argument in *Sandisk*.  Petition for a Writ of Mandamus at 18, *In re
Sandisk Techs., Inc.*, No. 25-152 (Fed. Cir. Sept. 17, 2025), 2025 WL
3526507; *Sandisk*, 2025 WL 3526507, at *1; *see also Motorola*, 159 F.4th
at 37-38 (rejecting argument that combination of "expense of filing
petitions" and reliance create a protectable interest).

should nonetheless institute because the reexamination Examiner failed to consider a material prior art reference.  Appx163-174.

Accordingly, the USPTO satisfied any due-process rights Petitioners had in the IPR institution process.  *See Motorola*, 159 F.4th at 37 (assuming "principles [regarding surprise] are applicable to this context" and explaining that nonetheless "Motorola did not experience anything close to the kind of unfair surprise that might raise a due process violation").  The relief Petitioners seek is not to be heard on its IPR petition in light of institution criteria applied by Acting Director Stewart—because it was heard—but for the Acting Director Stewart to apply different discretionary criteria and reach a different outcome.  The Due Process Clause requires no such remedy and certainly does not guarantee Petitioners a specific outcome once heard.  *Motorola*, 159 F.4th at 37.

C.  Petitioners' invocation of retroactivity and reliance principles (Pet. 14-19) similarly fails.  A "retroactive" rule is one that "would impair rights a party possessed when he acted, increase a party's liability for past conduct, or impose new duties with respect to

transactions already completed." *Landgraf v. USI Film Prods.*, 511 U.S. 244, 280 (1994); *see also Princess Cruises, Inc. v. United States*, 397 F.3d 1358, 1362 (Fed. Cir. 2005). Petitioners incorrectly suggest that Acting Director Stewart applied criteria for discretionary denial retroactively.

This Court has made clear that the retroactivity analysis examines "not merely whether a change has occurred," but "the *nature and extent* of the change in the law," as well as "familiar considerations of fair notice, reasonable reliance, and settled expectations." *Rodriguez v. Peake*, 511 F.3d 1147, 1153 (Fed. Cir. 2008) (first quoting *Princess Cruises,* 397 F.3d at 1363; and then quoting *Landgraf*, 511 U.S. at 270).

Here, the Acting Director's denial of institution did not affect any of Petitioners' rights, because an IPR petitioner never has a right to institution, let alone any particular set of discretionary criteria regarding institution. *Princess Cruises*, relied upon by Petitioners (Pet. 16), therefore, is inapposite. *Princess Cruises* involved an agency ruling that "worked a significant change in the law" for "already completed cruises" where Princess could not rebut a presumption that

all passengers disembarked at a particular layover port, thereby resulting in Princess being overcharged port fees. 397 F.3d at 1367. *See also Durr v. Nicholson*, 400 F.3d 1375, 1380 (Fed. Cir. 2005) (concluding a rule change "would have impermissible retroactive effect if it would render invalid a notice" of appeal a litigant who had a statutory right to file); Pet. 17 (discussing *Durr*).

By contrast, here, Acting Director Stewart's denial of institution did not abridge Petitioners' rights; the IPR statute contains no criteria regarding denial of institution and the USPTO is "never compelled[] to institute an IPR." *Mylan*, 989 F.3d at 1382. Whether IPR is instituted or not, Petitioners' substantive rights and obligations are unchanged. The institution decision neither invalidates the challenged patent claims nor ends a petitioner's duty not to infringe a patent. Petitioners may prefer to challenge patent validity through IPR, but the institution or non-institution of IPR does not impose any substantive legal consequences on Petitioners' conduct—past, present, or future.

Nor can Petitioners articulate any reasonable reliance interest in the former Director's discretionary guidance. (Pet. 18-19.) To the extent

Petitioners suggest that they altered their litigation strategy in expectation of a potential IPR, Pet. 18-19, Petitioners do not explain why such considerations would be relevant to a retroactivity analysis, which focuses on the "rights or obligations of the parties," rather than which "tribunal … is to hear the case." *Landgraf*, 511 U.S. at 274 (explaining that rules that "take[] away no substantive right but simply change[] the tribunal that is to hear the case" are not subject to the presumption against retroactivity (quotation marks omitted)).

Moreover, such reliance would be unreasonable given the discretionary nature of IPR institution decisions. The fundamental and mistaken premise driving Petitioners' argument is, absent the Acting Director's consideration of actions taken in the prior reexamination, they would have been entitled to institution of IPR. *See* Pet. 16. But as explained above, "no petitioner has a right to … institution." *Mylan*, 989 F.3d at 1382. This Court has made clear that Petitioners had no justifiable reliance interests in prior discretionary guidance. *See Motorola*, 159 F.4th at 37-38; *Cambridge*, 2025 WL 3526129, *2. As ever, the Director remains free to update agency policy or guidance

regarding institution discretion in light of new circumstances or policy changes.

Petitioners argue that *Motorola* did not address its retroactivity arguments in view of *Princess Cruises*, but the petitioner in *Sandisk* made nearly identical arguments, to no avail.  Petition for a Writ of Mandamus at 14, *In re Sandisk Techs., Inc.*, No. 25-152 (Fed. Cir. Sept. 17, 2025), 2025 WL 3526507; *Sandisk*, 2025 WL 3526507, at *1; *see also Cambridge*, 2025 WL 3526129, *2 (noting *Motorola* rejected retroactivity arguments). Petitioners also attempt to distinguish *Motorola* because here, they "were never 'on notice' the USPTO would deny a petition simply because EPR exists as an alternative."  Pet. 20. Similarly, Petitioners argue that the Acting Director applied a USPTO "divert-to-EPR rule" that violates "common industry understanding." Pet. 17.  The Acting Director applied no such rule.  Rather, the Acting Director exercised her statutory discretion in a specific factual scenario—one in which a party submitted a purportedly material prior-art reference during reexamination that the Examiner did not consider.  Appx2.  Her determination that reexamination was the most

efficient forum for presenting the IPR unpatentability issues was fact-specific and not part of a new "divert-to-EPR rule."

## C. Petitioners' Equal Protection Claims Are Meritless Statutory Claims.

Petitioners attempt to recast their unreviewable APA arguments as constitutional Equal Protection claims. Pet. 21-28. Equal Protection "jurisprudence has typically been concerned with governmental classifications that affect some groups of citizens differently than others" and parties "generally allege that they have been arbitrarily classified as members of an identifiable group." *Engquist v. Oregon Dept. of Agr.*, 553 U.S. 591, 601 (2008) (citations omitted). Absent conditions triggering heightened scrutiny of government actions, "when social or economic legislation is at issue," Equal Protection principles allow the government "wide latitude and the Constitution presumes that even improvident decisions will eventually be rectified by the democratic process." *City of Cleburne, Tex. v. Cleburne Living Center*, 473 U.S. 432, 440 (1985) (cleaned up).

A. Petitioners argue that the Acting Director separately classified Petitioners by denying institution merely because reexamination is

available as an alternative—despite instituting other cases where reexaminations are also available.  Pet. 21.  Petitioners' Equal Protection argument is simply a reframed impermissible APA argument that the Acting Director arbitrarily denied their IPR when she had not done so in other cases.  This argument is not reviewable on mandamus. *See pp.* 12-19, *supra.*

B.  Petitioners' argument also does not raise Equal Protection concerns because the Acting Director has not classified Petitioners differently than other similarly situated parties.  Although Petitioners identify other IPR proceedings (Pet. 22), those cases did not have similarly situated parties treated differently by the USPTO.  Unlike the facts here, none of those cases involved a prior reexamination of the same patent challenged in the IPR, where the examiner did not consider a purportedly material prior-art reference submitted by patent owner.  Appx2.  Rather, those other decisions merely reflect weighing of discretionary denial considerations specific to the differing facts of those cases and do not create protectible classes of IPR petitioners.

C. Even if the Acting Director classified Petitioners differently than other similarly situated parties, the Acting Director still would have had a rational basis for doing so and would not have acted arbitrarily. The Acting Director explained that reexamination is "the most efficient process" for the factual circumstances of this case where the purportedly material prior-art reference was already presented, but not considered, in reexamination. Appx2. A government decision survives rational-basis review where there is "any reasonably conceivable state of facts that could provide a rational basis for the classification," and a challenger "ha[s] the burden to negative every conceivable basis which might support it." *F.C.C. v. Beach Communications, Inc.*, 508 U.S. 307, 312, 315 (1993) (citations omitted). The Court need not even posit a "conceivable" reason for the agency's decision here; the Acting Director's explanation provides an entirely rational basis for the purported classification.

D. Petitioners' argument that the USPTO departed from its § 325 precedent (Pet. 24-28) fares no better. The Acting Director did not deny institution under § 325(d), but denied institution for efficiency reasons.

36

Appx2.  Section 325(d) does not mandate institution and Petitioners do not identify anything from USPTO precedent that mandates institution under the facts of this case.

## III.    Petitioners Cannot Satisfy The Other Mandamus Factors.

Even if they could meet the mandamus standard's demanding merits bar, Petitioners could not satisfy the remaining two factors: the absence of "adequate alternative means to obtain the relief" sought and a showing that "the writ is appropriate under the circumstances." *Dominion Dealer Sols.*, 749 F.3d at 1381 (quotation marks omitted); *see also Cheney*, 542 U.S. at 380-81.

### A.    Petitioners Have Alternate Means of Relief.

In a single sentence, Petitioners contend that they have no alternative means of relief because this Court has stated that "there is no adequate remedy by way of direct appeal."  Pet. 31 (quoting *In re Palo Alto Networks, Inc.*, 44 F.4th 1369, 1374 (Fed. Cir. 2022)).  But the only harm Petitioners claim is the denial of one avenue for challenging patent claims.[7]  There is no question that there are other avenues for

_____

[7] In a hypothetical case, a petitioner might contend that the USPTO violated the Constitution in the course of denying institution in a way

Petitioners to pursue validity challenges, including in district court or ex parte reexamination. *Cf. Motorola*, 159 F.4th at 37 (recognizing that IPR institution denial does not affect petitioner's ability to raise patentability issues elsewhere). Indeed, the Acting Director's suggestion to present these unpatentability issues in a reexamination request is the basis for Petitioners' mandamus filing. Appx2. Petitioners' abbreviated discussion does not address these obvious alternative means of relief, so Petitioners cannot carry their burden to show that the alternatives are inadequate. And the fact that the alternate relief available is not a party's preferred type does not make that relief inadequate or support a grant of mandamus. *See Fornaro v. James*, 416 F.3d 63, 69 (D.C. Cir. 2005); *Barnhart v. Devine*, 771 F.2d 1515, 1527 (D.C. Cir. 1985); *Bryan v. McDonald*, 615 F. App'x 681, 684 (Fed. Cir. 2015) (unpublished).

---

that inflicted some independent harm, e.g., by denying a petition for reasons triggering heightened scrutiny. But here, Petitioners assert no such harm.

## B. Mandamus Relief Is Inappropriate Under the Circumstances.

Finally, "even if the first two prerequisites [for mandamus] have been met, the issuing court, in the exercise of its discretion, must be satisfied that the writ is appropriate under the circumstances." *Cheney*, 542 U.S. at 381. For the reasons discussed above, (1) Petitioners have not advanced any colorable constitutional claims for this Court to hear on mandamus; (2) Petitioners' constitutional claims are repackaged unreviewable APA claims without merit; and (3) Petitioners may still pursue their invalidity defenses in the district court litigation or file ex parte reexamination requests.

But even beyond Petitioners' inadequate legal showing and multiple other routes to challenging patent claims, Petitioners seek an inappropriate exercise of this Court's mandamus authority. Petitioners ask this Court to force the current USPTO leadership to abandon how it exercises the broad discretion Congress entrusted to the USPTO Director. Petitioners cast this Director's exercise of discretionary criteria as conflicting with "statutory criteria" for institution (Pet. 32) and seek to reverse policy determinations reflected by the relevant

guidance.  *See* Appx15-17.  That is not the system Congress enacted. Issuing the writ Petitioners request would not only inappropriately encroach on the Director's statutory discretion, it would raise political-accountability concerns, hamstringing the current Director from responding to evolving conditions facing the agency and making his own policy judgments.  *See Arthrex,* 594 U.S. at 21.  Nothing in these circumstances indicates that this is the sort of extraordinary situation that could warrant this Court's issuance of an extraordinary writ.

## CONCLUSION

The Court should deny the petition for a writ of mandamus.

|  | */s/ Fahd H. Patel* |
| BRAD HINSHELWOOD | NICHOLAS T. MATICH |
| LAURA E. MYRON | *Solicitor* |
| *Attorneys, Appellate Staff* | ROBERT J. McMANUS |
| *Civil Division, Room 7228* | *Acting Deputy Solicitor* |
| *U.S. Department of Justice* | FAHD H. PATEL |
| *950 Pennsylvania Ave. NW* | PETER J. SAWERT |
| *Washington, D.C. 20530* | *Associate Solicitors* |
| *(202) 514-4819* | *Office of the Solicitor* |
|  | *U.S. Patent and* |
|  | *Trademark Office* |

December 22, 2025

# CERTIFICATE OF COMPLIANCE

I certify that the foregoing Director's Response to Petition for Writ of Mandamus complies with the type-volume limitation of Federal Rule of Appellate Procedure 21(d)(1) because it contains 7,143 words, excluding the table of contents, table of authorities, and signature block, as measured by the word-processing software used to prepare this filing.

Dated: December 22, 2025

*/s/ Fahd H. Patel*
Fahd H. Patel